UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RICHARD E. CRAYTON,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Case No. 18-cv-402 (DWF/ECW)

**REPORT AND RECOMMENDATION**

This matter is before the Court on Petitioner Richard E. Crayton's ("Crayton") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. No. 1) ("Petition"). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends the Petition be denied.

    **I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

**A.**    **Crayton's Indictment**

On or about January 27, 2010, a federal grand jury in the Western District of Wisconsin returned an indictment charging Crayton with distribution of heroin, resulting in the death of N.H., in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Dkt. No. 1-1.) Pursuant to 21 U.S.C. § 841(b)(1)(C), anyone who distributes a controlled substance may be sentenced to up to 20 years in prison. However, "if death or serious bodily injury results from the use of such substance," there is a mandatory minimum term

of 20 years in prison, and a maximum term of life in prison.  *See* 21 U.S.C. § 841(b)(1)(C).

**B.   Jury Verdict and Sentencing**

Crayton proceeded to trial in February 2011.  The jury found Crayton guilty of distributing heroin, but could not reach a decision on the following special verdict question: "Did the heroin distributed by defendant Richard E. Crayton in Count 1 result in the death of [N.H.] from the use of the heroin?"  (W.D. Wisc. 3:10-cr-0012, Dkt. No. 56-1.)  After the trial, the government provided notice to the trial and sentencing judge, United States District Judge Barbara B. Crabb, that it believed that "the offense of conviction" established that death or serious bodily injury resulted from the use of the heroin and that if the sentencing court found by a preponderance of the evidence that Crayton's distribution of the heroin "resulted in the death of [N.H.] from the use of the heroin, the Court is obligated to impose the mandatory minimum sentence of twenty years."[1]  (W.D. Wisc. 3:10-cr-0012, Dkt. No. 63.)  The government did not intend to present any additional evidence on the "death enhancement," but instead intended to summarize the evidence presented at trial.  (*Id.*)

At sentencing, Crayton objected to application of the "death enhancement."  (*See* Dkt. No. 11 at 4:10-6:22.)  The evidence at trial was that N.H. had been given the heroin that resulted in her death by another person, K.K., who testified that he had obtained the

---

[1]     At the time of sentencing, the law permitted the sentencing court to find that use of the distributed drugs resulted in death by a preponderance of the evidence.  *See United States v. Crayton*, 455 F. App'x 688, 690 (7th Cir. 2011) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

heroin from Crayton (known to him as "Rip") at the house of K.K.'s friend J.G.[2] (W.D. Wisc. 3:10-cr-0012, Dkt. No. 71 at 22:14-16; *see also* 16:12-1:23:11 (describing chain of events).) Crayton's theory was that K.K. had obtained heroin from another source, D.B., before obtaining heroin from Crayton, that it was unknown whether the heroin that N.H. took came from Crayton or D.B., and that because there were two "legitimate sources" of the heroin, the sentencing court could not find by a preponderance of the evidence that the heroin that killed N.H. came from Crayton. (Dkt. No. 11 at 5:11-6:22.) Crayton sought to present evidence regarding this potential other source at trial through D.B.'s testimony and a prior statement of D.B. (W.D. Wisc. 3:10-cr-0012, Dkt. No. 66 at 46:21-73.) However, after voir dire of D.B., the court found he was unavailable due to lack of memory or mental infirmity but that none of the hearsay objections applied.[3] (*Id.* at 62:12-73:19.)

The sentencing court rejected Crayton's other source argument at the sentencing hearing, stating "I don't think that the evidence is at all strong on that point" and that D.B.'s prior statement "just doesn't jive with anything else [the sentencing court had] heard." (Dkt. No. 11 at 16:23-17:19.). The sentencing court ruled as follows: "So I find by the preponderance of evidence that the heroin Mr. Crayton distributed was the heroin that caused the death of [N.H.]." (Dkt. No. 11 at 7:19-8:1.)

---

[2]  J.G. identified "Rip" as Crayton. (W.D. Wisc. 3:10-cr-0012, Dkt. No. 71 at 54:5-14; *see also id.* at 52:2-56:10 (describing events).)

[3]  The witness had no memory due to an overdose of Fentanyl after N.H. died that rendered him incompetent to stand trial for pending state charges. (*See* W.D. Wisc. 3:10-cr-0012, Dkt. No. 71 at 47:4-52:16.)

The sentencing court found Crayton's total offense level to be 38, and his criminal history category to be IV, resulting in an advisory Sentencing Guidelines range of 324-405 months in prison. (*Id.* at 15:22-16:12.). Despite having reservations as to the fairness and effectiveness of the statutory penalty, the sentencing court imposed the then mandatory minimum 20-year sentence under 21 U.S.C. § 841(b)(1)(C) due to its application of the "death enhancement," noting the applicable law in the Seventh Circuit. (*Id.* at 15:13-17:22.)

## C.     Crayton's Direct Appeal of his Sentencing to the Seventh Circuit.

Crayton appealed his sentence to the Seventh Circuit. *See United States v. Crayton*, 455 F. App'x 688 (7th Cir. 2011) ("*Crayton I*"). The Seventh Circuit held in relevant part as it relates to his mandatory minimum twenty-year sentence, as follows:

> We next consider whether the district court erred when it sentenced Crayton to a mandatory minimum twenty-year sentence. The Supreme Court has held that the Due Process Clause of the Fifth Amendment mandates that "other than the fact of a prior conviction, any fact that increases the penalty of a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, the Supreme Court later clarified that this holding does not apply to increases in mandatory minimum penalties. Consequently, a statute can increase the minimum penalty for a crime when a fact is found by a judge under a preponderance of the evidence standard. *Krieger*, 628 F.3d at 863 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)). We have previously held that the "death resulting" enhancement under 21 U.S.C. § 841(b)(1)(C) is a sentencing factor that can be found by a judge under a preponderance of the evidence standard. *Id.* at 867.

*Crayton*, 455 F. App'x at 690. The Seventh Circuit went on to find that the district court was not precluded from considering at sentencing whether Crayton's distribution of heroin resulted in the death of another individual and that there was ample evidence to

4

support the Court's decision, by a preponderance of the evidence, that the heroin distributed by Crayton caused the death of N.H. *Id.* at 691. Crayton filed a petition for certiorari to the United States Supreme Court, which was denied. *See Crayton v. United States*, 566 U.S. 991 (2012).

**D.      Crayton's First Section 2255 Petition**

On February 21, 2013, Crayton filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2255 based on the *Alleyne v. United States* case for which the Supreme Court had granted certiorari, but not yet decided. (W.D. Wisc. 3:10-cr-0012, Dkt. No. 102.) Crayton argued that pursuant to *Alleyne*, his sentence could not be enhanced based on an element or conduct not determined by a jury. (*Id.* at 4.) The sentencing court gave Crayton the opportunity to withdraw his § 2255 Petition on the basis that his motion could not succeed. (W.D. Wisc. 3:10-cr-0012, Dkt. No. 103.) By withdrawing the motion, which Crayton agreed to do, the sentencing court represented that Crayton "will be free to file a new motion in the event the Supreme Court should decide both that federal courts have no authority to increase a mandatory minimum sentence in the absence of findings by the jury and that its holding applies retroactively to all cases in which courts have made such increases." (*Id.*)

On August 5, 2013, Crayton renewed his § 2255 petition based on the June 17, 2013 decision by the Supreme Court in *Alleyne v. United States*, 570 U.S. 99 (2013). (W.D. Wisc. 3:10-cr-0012, Dkt No. 104 at 4.) In *Alleyne*, the Supreme Court held that any fact that increases the mandatory minimum sentence constitutes and is an element of the offense, and not a sentencing factor, thereby requiring a unanimous jury finding of

5

any fact that would increase the mandatory minimum that was proven beyond a reasonable doubt. *See Alleyne*, 570 U.S. at 114-16. On September 23, 2013, Judge Crabb denied Crayton's § 2255 petition because:

> In *Alleyne*, the Court held that any fact that increases the mandatory minimum penalty for a crime is an "element of the crime" and must be submitted to the jury, but it did not say that its ruling would apply retroactively to cases on collateral review. Only the Supreme Court can determine whether a decision has retroactive effect, so the Court's silence on this point means that the holding does not apply to defendant's sentencing. Therefore, his motion for post conviction relief must be denied.

(W.D. Wisc. 3:10-cr-0012, Dkt. No. 105 at 1.)

E.   **Appeal of Judge Crabb's Decision Regarding Section 2255 Petition to the Seventh Circuit.**

On November 13, 2013, Petitioner appealed Judge Crabb's decision on his § 2255 petition to the Seventh Circuit. (W.D. Wisc. 3:10-cr-0012, Dkt. No. 106.) The Seventh Circuit held that "*Alleyne* does not apply retroactively" to initial petitions under § 2255.[4] *Crayton v. United States*, 799 F.3d 623, 624 (7th Cir. 2015). As the Seventh Circuit noted, "[e]very court of appeals that has considered the subject has concluded that *Alleyne* is not retroactive on collateral review." *Id.* (string citation omitted).

F.   **Crayton's Second Section 2255 Petition**

Crayton subsequently filed an application pursuant to 28 U.S.C. § 2244(b)(3),

---

[4] The Seventh Circuit had previously decided that "*Alleyne* does not authorize a second or successive collateral attack under § 2255(h)(2) because only the Supreme Court can declare a decision retroactive for the purpose of that paragraph." *Crayton*, 799 F.3d at 624 (citing *Tyler v. Cain,* 533 U.S. 656 (2001)).

seeking authorization to file a successive motion to vacate under § 2255 to challenge his sentence under the Supreme Court's January 27, 2014 decision in *Burrage v. United States*, 134 S. Ct. 881 (2014), which held that application of the "death enhancement" of § 841(b)(1)(C) requires the government to prove beyond a reasonable doubt that the drugs a defendant distributed were a "but for" cause of death. (W.D. Wisc. 3:10-cr-0012, Dkt. No. 112.) The Seventh Circuit denied his request:

> *Burrage* announced a rule of statutory interpretation, not a constitutional rule. Accordingly, *Burrage* is not amenable to analysis under § 2255(h) and cannot support authorization for a second § 2255 action. Crayton must obtain relief, if at all, via a petition for a writ of habeas corpus, 28 U.S.C. § 2241, filed in the court with jurisdiction over his custodian.

(*Id.* (citations omitted).)

### G.     Present Section 2241 Petition

In his present Petition, brought under § 2241, Crayton argues *Burrage* presents a constitutional challenge to his death-enhanced sentence under 841(b)(1)(c) since the Government did not prove beyond a reasonable doubt that the drugs distributed to N.H. were the "but for" cause of her death. (Dkt. No. 1 at 4.) Crayton asserts that the Seventh Circuit has made *Burrage* retroactive. (*Id.* at 10-11.) Crayton argues that he is entitled to have his sentence vacated and remanded to the United States District Court for the Western District of Wisconsin for re-sentencing in light of *Burrage* since he cannot receive the death enhancement of § 841(b)(1)(c) unless it is proven to a jury beyond a reasonable doubt that he was the "but for" cause of N.H.'s death.

## II.   ANALYSIS

**A.   Legal Standard**

"It is well settled a collateral challenge to a federal conviction or sentence must generally be raised in a motion to vacate filed in the sentencing court under § 2255 . . . and not in a habeas petition filed in the court of incarceration . . . under § 2241." *Hill v. Morrison*, 349 F.3d 1089, 1091 (8th Cir. 2003). Federal district courts lack jurisdiction to hear a federal prisoner's collateral challenge to his original conviction or sentence brought in a habeas petition unless the prisoner demonstrates that the remedy provided by § 2255 is inadequate or ineffective to test the legality of his detention. *See* 28 U.S.C. § 2255(e) ("An application for a writ of habeas corpus in behalf of a [federal] prisoner . . . shall not be entertained . . . unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."); *DeSimone v. Lacy*, 805 F.2d 321, 323 (8th Cir. 1986) (per curiam). The "inadequate or ineffective remedy" exception is often referred to as the "savings clause." *See Abdullah v. Hedrick*, 392 F.3d 957, 959 (8th Cir. 2004).

Neither the Supreme Court nor the Eighth Circuit Court of Appeals has set forth the exact contours of the savings clause. It is clear, however, that the savings clause applies very narrowly. For example, "[i]t is well established that in order to establish a remedy is inadequate or ineffective under § 2255, there must be more than a procedural barrier to bringing a § 2255 petition." *Abdullah*, 392 F.3d at 959 (quotation omitted). Thus, it is not enough to show that a motion under § 2255 would now be untimely, or that the motion would now require authorization due to being "second or successive." *See*

*United States v. Lurie*, 207 F.3d 1075, 1077 (8th Cir. 2000) (collecting cases). At a minimum, the petitioner seeking to invoke the savings clause must show that she "had no earlier procedural opportunity to present [her] claims." *Abdullah*, 392 F.3d at 963; *accord United States v. Barrett*, 178 F.3d 34, 53 (1st Cir. 1999) ("[W]here a prisoner had an opportunity to present his claim properly in his first § 2255 petition, but failed to do so, any 'ineffectiveness' of his current § 2255 petition is due to him and not to § 2255.").

Circuit courts outside of the Eighth Circuit have concluded that if a petitioner has already filed a § 2255 petition, and if he is relying on a new retroactive rule of statutory interpretation adopted by the Supreme Court, § 2255 may—if other circuit-specific factors are met—be inadequate and ineffective, and thus a petitioner may be able to bring the claim under § 2241. *See*, *e.g.*, *United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018); *Harrington v. Ormond*, 900 F.3d 246, 249 (6th Cir. 2018); *Hill v. Masters*, 836 F.3d 591, 595 (6th Cir. 2016); *United States v. Tyler*, 732 F.3d 241, 246 (3d Cir. 2013); *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012); *Reyes-Requena v. United States*, 243 F.3d 893, 903-04 (5th Cir. 2001); *In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000); *Triestman v. United States*, 124 F.3d 361, 373 (2d Cir. 1997); *but see*, *McCarthan v. Dir. of Goodwill Indus. Suncoast, Inc.*, 851 F.3d 1076, 1085-90 (11th Cir. 2017) (holding that a new statutory interpretation does not render § 2255 inadequate or ineffective for petitioners seeking to file a second or successive petition); *Prost v. Anderson*, 636 F.3d 578, 587-88 (10th Cir. 2011) (Gorsuch, J.) (same).

Of the Circuits referenced above, the Fourth, Sixth, and Seventh Circuits have also expressly permitted petitioners to challenge their sentences related to a new statutory

interpretation through the savings clause. In allowing the petitioner in *Wheeler* to challenge his sentence, the Fourth Circuit set the following requirements for proceeding via the savings clause: (1) "at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence;" (2) the law changed after the prisoner appealed and filed an initial § 2255 motion and this change applies retroactively; (3) the prisoner cannot fulfill § 2255(h)(2)'s requirements for second or successive motions; and (4) the retroactive change caused a mistake in sentencing that is "sufficiently grave to be deemed a fundamental defect." *Wheeler*, 886 F.3d at 429.

The Seventh Circuit used similar elements as part of applying the saving clause to a challenge of a sentence enhancement:

> First, the prisoner must show that he relies on a statutory-interpretation case, rather than a constitutional case. Second, the prisoner must show that he relies on a retroactive decision that he could not have invoked in his first § 2255 motion. The third condition is that the sentence enhancement have been a grave enough error to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding.

*Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013) (cleaned up).

The Court also notes that the Sixth Circuit has recently concluded that an actual-innocence claim under the savings clause based on *Burrage* may well have merit. *See Harrington*, 900 F.3d at 249. Pursuant to the Sixth Circuit's decision in *Harrington*, savings-clause petitioners can show actual innocence by demonstrating:

> (1) the existence of a new interpretation of statutory law, (2) which was issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) is retroactive, and (4) applies to the merits of the petition to make it more likely than not that no reasonable juror would have convicted him.

10

*Id.* The Sixth Circuit found that first three elements of the test had been met and remanded the case back the district court to decide whether *Burrage* "applies to the merits of [Harrington's] petition to make it more likely than not that no reasonable juror would have convicted him. *Id* at 249-50 (alterations in original).

**B.     Crayton's Petition Fails Regardless of Whether Seventh Circuit or Eighth Circuit Law Applies**

The Court considers whether the Petition falls within the scope of the savings clause under either Seventh or Eighth Circuit law. As to the first element under the Seventh Circuit's test in *Brown*, *supra*, there is no dispute that *Burrage* is a statutory interpretation case, as it interprets the "death results" enhancement factor in 21 U.S.C. § 841(b)(1)(C). *See Krieger v. United States*, 842 F.3d 490, 499-500 (7th Cir. 2016); *Smith v. Wilson*, No. 14-cv-0510 (PJS/HB), 2014 WL 5489244, at *7 (D. Minn. Oct. 30, 2014) ("Turning to the first condition, there is no question that *Burrage* is a statutory interpretation case, as it interprets the 'death results' enhancement factor in 21 U.S.C. § 841(b)(1)(C)."). However, Crayton cannot satisfy the Seventh and Eighth Circuit's requirement that he had no earlier procedural opportunity to present his claims within the courts of the Seventh Circuit. *See Brown*, 719 F.3d at 586 (holding that "the prisoner must show that he relies on a retroactive decision that he could not have invoked in his first § 2255 motion"); *Abdullah*, 392 F.3d at 963 (finding petitioner could not benefit from savings clause where he had "an unobstructed procedural opportunity to present his claim" beforehand); *Hill*, 349 F.3d at 1092 (holding that § 2255 is not inadequate or ineffective where the petitioner had "at least two opportunities to raise [his] argument

11

before the sentencing court"); *United States v. Lurie*, 207 F.3d 1075, 1077-78 (8th Cir. 2000) (finding that the petitioner had failed to demonstrate the § 2255 motion was inadequate or ineffective because all of the claims asserted could have been maintained in a timely § 2255 motion or on direct appeal); *see also Wilson v. Lowry*, No. 98-cr-00177 (SRN), 2017 WL 5158654, at *2 (D. Minn. Nov. 7, 2017) (requiring that the prisoner's claim be "**foreclosed by (erroneous) circuit law at the time of sentencing, direct appeal, and a first motion under § 2255**") (emphasis added).

Under Seventh Circuit precedent, a claim is previously unavailable "if it would have been futile to raise a claim in the petitioner's original section 2255 motion, as the law was squarely against him." *Montana v. Cross*, 829 F.3d 775, 784 (7th Cir. 2016) (alterations omitted) (citing *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (en banc)); *see also Morales v. Bezy*, 499 F.3d 668, 672 (7th Cir. 2007) (finding that "[o]nly if the position is foreclosed (as distinct from not being supported by—from being, in other words, novel) by precedent . . ." can a petitioner satisfy the second prong of the test).

Here, Crayton's Petition fails because he had an earlier procedural opportunity to present claims based on a "but for" causation standard within the courts of the Seventh Circuit. As stated previously, in January 2014, the Supreme Court issued its opinion in *Burrage* holding that "[a]t least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." 134 S. Ct. at 892.

12

However, in 2010, well before Crayton's trial and sentencing in 2011, the Seventh Circuit decided *United States v. Hatfield*, 591 F.3d 945 (7th Cir. 2010), which similarly held that:

> [T]he "death results" enhancement requires the government to prove that "ingestion of the defendants' drugs **was a 'but for' cause of the death**[ ]." *Id.* at 948. *Hatfield* rejected jury instructions that used vaguer, less demanding language to describe the necessary causal relationship; it said that the district court could not summarize the "death results" enhancement as requiring the jury to find only that the illegal drugs "played a part" in the victim's death. *Id.* at 949.

*Perrone v. United States*, 889 F.3d 898, 902 (7th Cir. 2018) (quoting *Hatfield*, 591 F.3d at 948-49), *cert. denied*, 139 S. Ct. 654 (2018) (emphasis added). Indeed, the Seventh Circuit has found that the *Burrage* decision "effectively ratified *Hatfield*'s standard of causation. The [Supreme] Court held that the 'death results' enhancement ordinarily requires the government to prove that the victim would have lived but for the unlawfully distributed drugs." *Id.* Thus, the Seventh Circuit in *Hatfield* imposed the same "but for" causation standard on the government as of 2010—and during Crayton's trial and sentencing in 2011—that the Supreme Court set forth in *Burrage* in 2014. Accordingly, Crayton had an opportunity to assert at trial and sentencing, during his appeal, and as part of his first § 2255 petition that the trial court erred by not applying a "but for" causation standard when determining whether the heroin Crayton distributed was the heroin that caused the death of [N.H.] for the purposes of the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C).[5] Having had the procedural opportunity to raise a "but for"

---

[5]  Crayton argues that he could not have incorporated *Hatfield* into his direct appeal or original § 2255 petition because "Hatfield was issued prior to the defendant being indicted, did not refine with the *Burrage* court did, and was not a Supreme Court decision." (Dkt. No. 13 at 2-3.) On the contrary, *Hatfield*'s issuance before Crayton's

causation argument on appeal or in his original § 2255 petition, Crayton cannot show under Seventh or Eighth Circuit law that the remedy provided by § 2255 is "inadequate or ineffective to test the legality of his detention."[6] *See Brown*, 719 F.3d at 586 (holding that "the prisoner must show that he relies on a retroactive decision that he could not have invoked in his first § 2255 motion"); *Abdullah*, 392 F.3d at 963 (petitioner could not benefit from savings clause where he had "an unobstructed procedural opportunity to present his claim" beforehand). Accordingly, this district court lacks subject matter jurisdiction to hear his collateral challenge to a conviction or sentence under § 2241. *See DeSimone v. Lacy*, 805 F.2d 321, 323 (8th Cir. 1983).

Crayton also argues that he is entitled to have a jury make the determination of whether he was the "but for" cause of N.H.'s death using the "beyond a reasonable

---

indictment meant it was available to Crayton on appeal and in his original § 2255 petition, and neither the fact that it was not a Supreme Court decision and nor that it issued before *Burrage* prevented him from doing so.

[6] Crayton asserts that *Krieger* is not distinguishable from his case. (Dkt. No. 1 at 10-11.) On the contrary, the *Krieger* court expressly noted that the district court—which tried and sentenced Krieger in 2008, before *Hatfield* issued in 2010—"had no reason to know that 'but-for' causation was the requirement" and relied on the "murkiness of causation" in the district court's sentencing order when deciding to grant the petition. 842 F.3d at 500-02. By the time Crayton was sentenced on March 23, 2011, *Hatfield* had been the law of the Seventh Circuit for over a year. Further, nothing in the jury instructions as to the "resulted in death" language in *Crayton* nor the transcript of his sentencing suggests there was any "murkiness" (e.g., any differentiation between "causes" and "results" or discussions about contributing causes or factors) about the causation standard for the "results from" enhancement. (*See, e.g.*, W.D. Wisc. 3:10-cr-0012, Dkt. No. 54 at 5-6; *id.*, Dkt. No. 86 at 5:7-10, 6:15-16, 7:25-8:1.) Rather, both reflect the ordinary use of "resulted in"—which the Supreme Court has explained is "but for" causation. *See Smith*, 2014 WL 5489244, at *2 ("As the Supreme Court has explained, the 'ordinary meaning' of 'results from' is actual, or but-for, causation.") (quoting *Burrage*, 134 S. Ct. at 887).

doubt" standard in light of *Burrage*. (Dkt. No. 1 at 9-12.) Setting aside the fact that the Seventh Circuit was already using the "but for" causation standard when Crayton was convicted and sentenced, the Supreme Court's decision in *Burrage* affords Crayton no relief under § 2255(e) with respect to the fact that the sentencing judge applied the "death enhancement" using a "preponderance of the evidence" standard. The Seventh Circuit's decision in *Camacho v. English*, 872 F.3d 811 (7th Cir. 2017) concluded that *Burrage* did not create a new rule of statutory interpretation that a jury must decide any fact that increases the minimum and maximum sentences. *Id.* at 814; *see also Lewis v. Kallis*, No. 18-CV-1371, 2019 WL 355524, at *3 (C.D. Ill. Jan. 29, 2019). Instead, that "concept . . . flows from *Apprendi* and *Alleyne*; *Burrage* merely applied it to the Controlled Substances Act." *Camacho*, 872 F.3d at 814. As explained in *Krieger*, "The *Burrage* holding is not about who decides a given question (judge or jury) or what the burden of proof is (preponderance versus proof beyond a reasonable doubt). It is rather about what must be proved." 842 F.3d at 499-500. Thus, even assuming that *Burrage* is retroactive on collateral review (*see Prevatte*, 865 F.3d at 898), the governing *Alleyne* decision that requires a unanimous jury finding beyond a reasonable doubt of any fact that would increase the mandatory minimum (570 U.S. at 114-16) is not retroactive. *See Crayton*, 799 F.3d at 624 (appeal regarding *Crayton*'s § 2255 petition); *see also Walker v. United States*, 810 F.3d 568, 575 (8th Cir. 2016) (holding that "even if *Alleyne* announced a new constitutional rule, that rule does not apply retroactively on collateral review").

Since the Seventh Circuit has already determined as part of Crayton's first § 2255 petition that the 2013 *Alleyne* decision did not apply retroactively to Crayton's 2011

15

sentence, Crayton has not shown why he would be entitled to the savings clause of § 2255(e) based on the fact that the sentencing court made the "death enhancement" finding using the "preponderance of the evidence" standard—an issue decided by the non-retroactive *Alleyne decision.* Accordingly, the Court is also without jurisdiction to hear Crayton's § 2241 Petition as it relates to his argument that he is entitled to have a jury make the determination beyond a reasonable doubt that he was the "but for" cause of N.H's death in light of the *Burrage* decision.[7] *See Abdullah,* 392 F.3d at 964 ("Because Abdullah did not show that § 2255 was inadequate or ineffective, the district court correctly concluded that it had no jurisdiction to consider his claim in a § 2241 petition.").

Moreover, it is evident from the Court's review of the Petition and the record, and in view of the findings described herein, that an evidentiary hearing would shed no light on issues that would affect the outcome.[8] Accordingly, the Court will recommend that Crayton's request, in the alternative, for an evidentiary hearing be denied.

---

[7] The Court also notes that while it is unclear, Petitioner also appears to assert that his sentencing violated his rights against double jeopardy and is contrary to the doctrine of res judicata because the jury exonerated him from the "resulted in death" offense conduct. (Dkt. No. 1 at 6.) However, such claims could have been brought as part of his first § 2255 Petition and therefore Crayton has not shown why he is entitled to the savings clause of § 2255(e) as to such claims.

[8] Ordinarily, a federal court may grant an evidentiary hearing in a habeas matter when there are genuine factual disputes. *See Kendrick v. Carlson*, 995 F.2d 1440, 1446 (8th Cir. 1993). There are no such factual disputes here that would affect the outcome and the Court otherwise lacks jurisdiction over this Petition.

### III.   RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED THAT:**

1. The petition for a writ of habeas corpus of Petitioner Richard E. Crayton (Dkt. No. 1) be **DENIED**.

2. Petitioner's request, in the alternative, for an evidentiary hearing be **DENIED**.

3. That this case be **DISMISSED WITH PREJUDICE**.


DATED:  April 23, 2019                                  *s/Elizabeth Cowan Wright*
                                                        ELIZABETH COWAN WRIGHT
                                                        United States Magistrate Judge


### NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).